UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LAZARO PEREZ CRIBEIRO** | : | **CRIMINAL ACTION 2:13-cr-315** |
| B.O.P. #17204-035 | | **CIVIL ACTION 2:16-cv-1261** |
| **VERSUS** | : | **CHIEF JUDGE DRELL** |
| **UNITED STATES OF AMERICA** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the Court are original and amended *pro se* Motions to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [docs. 406, 414], filed by petitioner Lazaro Perez Cribeiro ("Cribeiro"). For reasons stated below, **IT IS RECOMMENDED** that the motions be **DENIED**.

**I.**
**BACKGROUND**

*A. Conviction*

On December 11, 2013, Cribeiro and several others were charged in this court in a multi-count indictment with one count of conspiracy to possess with intent to distribute methamphetamine (Count 1), a violation of 21 U.S.C. § 846, and six counts of distribution of methamphetamine (Counts 2–8), a violation of 21 U.S.C. § 841(a)(1). Doc. 1. Cribeiro was a horse trainer who sold methamphetamine in and around Vinton, Louisiana. Doc. 282, att. 2, p. 1. From June to July of 2012, seven controlled purchases of methamphetamine were made from Cribeiro, with a total amount of 147.8 grams of methamphetamine sold in these transactions. *Id.* On one

occasion in 2012, codefendant Brian Keith Hebert ("Hebert") also obtained approximately two ounces of a mixture containing methamphetamine for resale from Cribeiro.[1] *Id.* at 1–2.

On October 14, 2015, Cribeiro, appearing in court with counsel, pleaded guilty to Count 2 of the indictment which charged him with distribution of five or more grams of methamphetamine on or around June 7, 2012. Docs. 1, 280. Shortly thereafter, he filed multiple motions to withdraw his guilty plea, *pro se* and through newly retained counsel, which the government opposed. *See* doc. 296. The motions were denied after hearing on December 17, 2015. Doc. 324. On January 12, 2016, Cribeiro was sentenced to a term of 70 months' imprisonment. Doc. 342.

### B. Direct Appeal

Cribeiro filed a *pro se* notice of appeal on February 1, 2016. Doc. 356. However, his attorney filed a motion to voluntarily dismiss the appeal on Cribeiro's behalf on February 24, 2016, with a statement signed by Cribeiro attached to that motion. Doc. 436, att. 1, pp. 13–15. The United States Fifth Circuit Court of Appeals granted the motion on February 26, 2016. Doc. 362.

### C. Instant Motion

Cribeiro filed the instant motion on September 1, 2016, amending it with leave of court on December 19, 2016. Docs. 406, 414. By his original motion he claims that he is entitled to a lesser sentence because, he claims, the court erred in calculating his guideline sentence. Doc. 406, pp. 2–3. In his amended motion, Cribeiro raised the following claims and requests an evidentiary hearing:

1. Ineffective assistance of trial counsel based on the following deficiencies:
    a. Failure to file a motion to suppress based on lack of search warrant/allegedly fraudulent arrest warrant
    b. Failure to file a motion to quash on the same basis
    c. Failure to subpoena surveillance videos
    d. Failure to investigate Cribeiro's claim that he was working out of state during some portion of the alleged conspiracy

---

[1] The above facts are drawn from the stipulated factual basis provided in support of Cribeiro's guilty plea. *See* doc. 282, att. 2.

e. Failure to interview list of witnesses provided by Cribeiro
             f. Coercing Cribeiro to sign plea agreement by telling him that his wife
                and daughter would be charged with money laundering.
    2. The government breached the plea agreement because Cribeiro was sentenced
       to a greater sentence than what he had expected.
    3. The district court erred in calculating the drug quantity used to determine the
       Guideline range.

Doc. 414; doc. 414, att. 1. Accordingly, the claim raised in the original § 2255 motion is refashioned into Claim 3 of the amended motion.[2]

## II.
### LAW AND ANALYSIS

*A. Scope of Review*

Following conviction and exhaustion or waiver of the right to appeal, the court presumes that a defendant "stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (quoting *United States v. Frady*, 102 S.Ct. 1584, 1592 (1982)). Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[3] *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

"It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). However, the collateral challenge process of § 2255 is no substitute for appeal. *E.g.*, *Brown v. United States*, 480 F.2d 1036, 1038 (5th Cir. 1973). As a general rule, thus, claims not raised on direct appeal may not be raised on collateral review unless

---

[2] Cribeiro raises some allegations in the original motion which are omitted under Claim 3 of his amended motion. We view these omissions as a deliberate decision to streamline the claim in the amended motion.
[3] The following claims are authorized under § 2255: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" and (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992).

the defendant shows cause and prejudice for his failure, or actual innocence. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). This is neither a statutory nor constitutional requirement, but instead a "doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 123 S.Ct. 1690, 1693 (2003).

While it is generally the government's responsibility to raise the issue of procedural default, the court may still impose the bar *sua sponte*. *United States v. Willis*, 273 F.3d 592, 596–97 (5th Cir. 2001). However, this should not be done without first considering whether the defendant has been given notice of the issue and had opportunity to argue against application of the bar, and whether the government has intentionally waived the defense. *Id.* at 597 (citing *Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000)).

### B. Application

#### 1. Ineffective assistance of counsel

Cribeiro first complains that he received ineffective assistance at various stages of the proceeding.

Ineffective assistance claims may be brought for the first time in a collateral proceeding under § 2255 regardless of whether the defendant raised the issue earlier. *Massaro*, 123 S.Ct. at 1694–96. Therefore review of this claim does not require a determination of whether Cribeiro can excuse his decision not to pursue any of these claims on direct appeal. *Id.* at 1696; *see also United States v. Johnson*, 124 Fed. App'x 914, 915 (5th Cir. 2005).

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a defendant must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the

errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or a dependable verdict. 104 S.Ct. at 2064. A defendant must satisfy both prongs of the *Strickland* test in order to prevail, and the court need not approach the inquiry in the same order or address both components should the defendant fail to satisfy one. *Id.* at 2069.

The first prong does not require perfect assistance by counsel; rather, defendant must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* at 2064. In this review courts "must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Strickland*, 104 S.Ct. at 2065). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the second prong, the court looks to any prejudice suffered as a result of counsel's deficient performance. This prong is satisfied if the defendant can show "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt" and that the errors were sufficiently serious to deprive the defendant of a fair trial with a reliable verdict. *United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002) (quoting *Strickland*, 104 S.Ct. at 2068–69). In the context of a guilty plea, the defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Allen*, 250 Fed. App'x 9, 12 (5th Cir. 2007) (unpublished) (quoting *Hill v. Lockhart*, 106 S.Ct. 366, 370 (1985)).

### a. *Failure to file a motion to suppress*

Cribeiro states that he advised one or more of his attorneys that no warrant was issued for the search of his residence at 1217 North Street in Vinton, Louisiana, and that the arrest warrants issued for him were falsely made. Doc. 414, att. 1, pp. 4–7. However, no motion to suppress was filed by any of his attorneys in this matter.[4] Cribeiro contends that his attorneys' failure to act on this information amounted to constitutionally deficient performance.

Evidence seized pursuant to an illegal search may be prohibited from use at trial under the exclusionary rule and the issue of admissibility of the evidence may be raised through the filing of a motion to suppress. *United States v. Hernandez*, 670 F.3d 616, 620 (5th Cir. 2012). To successfully establish an ineffective assistance of counsel claim for failure to file such a motion requires the court to consider whether or not, if filed, such a motion would have been successful. *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987).

### i. *1217 North Street search*

Cribeiro first alleges that there was no warrant for the search of 1217 North Street. Cribeiro's own evidence establishes this is not true.[5] As the government notes, among Cribeiro's supplemental exhibits is a return of search warrant relating to a search warrant issued on July 7, 2013, and a search conducted pursuant to that warrant the following day. Doc. 425, p. 63; *see id.* at 64–68 (Combined Anti-Drug Team report relating to search). That return also indicates that no items were seized during the search and is signed by a judge of the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana. *Id.* at 63.

---

[4] Cribeiro filed a *pro se* motion to suppress but made no argument relating to warrants or lack thereof but rather challenged authenticity of evidence seized. Doc. 271. The motion was denied summarily in a pretrial conference on October 8, 2015, without prejudice to Cribeiro's right to object to the evidence at trial. Doc. 275.

[5] Cribeiro received leave to file the exhibits contained at Docket Entry 425, which are various documents apparently received by the defense during pretrial discovery. *See* docs. 422, 424.

As Cribeiro points to nothing to be suppressed as a result of this search, he cannot show that counsel performed deficiently by failing file a motion to suppress.

        *ii.*        ***Arrest of Cribeiro***

The petitioner next challenges his arrest and the search that took place incident to that arrest at the room of a motel located at the Longhorn Truck Plaza, 2374 Highway 109, in Vinton, Louisiana. Cribeiro contends that officers encountered him while executing their search of 1217 North Street, described *supra*, on July 8, 2013. However, he alleges that they transported him to the Longhorn Truck Plaza and arrested him at a motel room there, which room had been occupied by a horse trainer from South Carolina, along with his wife and child, for the previous three weeks. *See* doc. 414, att. 1, p. 5.

As a result of the Combined Anti-Drug Team's ("C.A.T.") investigation of Cribeiro and others, which included controlled buys from Cribeiro at the Longhorn Truck Plaza, arrest warrants were issued for Cribeiro, listing his address as Room 218 at the Longhorn Truck Plaza. Doc. 425, pp. 8, 14, 22, 33, 44, 55; *see*, *e.g.*, *id.* at 5–7 (investigation report). The C.A.T. report compiled after Cribeiro's arrest and the search of 1217 North Street notes that he was arrested at the North Street address, which is identified as his residence. *Id.* at 66. The report also indicates that the officers searched the North Street address pursuant to a search warrant, as described under the previous portion of this claim. *Id.* at 66–67. It states that Cribeiro was then taken to the Vinton Police Department, not the Longhorn Truck Plaza. *See id.* at 67.

Here Cribeiro again presents no basis for invalidating his arrest or suppressing any statements taken or items seized incident to that arrest. Neither Louisiana nor federal law requires that an arrest warrant specify the address of the arrestee. *See* FED. R. CRIM. P. 4(b)(1); LA. C. CR.

P. art. 203. Generally, an arrest may be made at any location as long as it is supported by probable cause. *United States v. Kirk*, 392 F.Supp.2d 760, 766 (N.D. Miss. 2005).

Even if, as Cribeiro claims, the officers did transport him to the Longhorn Truck Plaza and stage an arrest there, he identifies no basis for suppression. Nothing in his allegations renders his arrest invalid, and he does not allege that any search of the Longhorn Truck Plaza room occurred, much less that there were any fruits of that search. Accordingly, he has not shown any deficiency of performance for counsel's failure to file a motion to suppress under this claim.

### b. *Failure to file a motion to quash*

Cribeiro next alleges that counsel was deficient for failing to file a motion to quash or dismiss the indictment based on the use of falsified search or arrest warrants. In support of this claim, he alleges that the arrest warrants show "irregularities" in the judge's signature and handwriting, and that the amount of drugs alleged in the warrants differed from what was provided in the attached police reports. Doc. 414, att. 1, p. 6. However, he does not connect these arguments to any coherent theory, much less show how they justify the extreme remedy of dismissing the indictment.[6] Therefore this claim likewise fails.[7]

Accordingly, Cribeiro does not show deficient performance based on his attorneys' failure to file a motion to quash.

---

[6] *See, e.g.*, *United States v. McKenzie*, 678 F.2d 629, 631 (5th Cir. 1982) (Even upon a showing of the "most egregious prosecutorial misconduct," the indictment may only be dismissed upon proof of actual prejudice, "when prosecutorial misconduct amounts to overbearing the will of the grand jury so that the indictment is, in effect, that of the prosecutor rather than the grand jury.")

[7] Despite our conclusion we have, nonetheless, reviewed the alleged irregularities and cannot find anything rising above the level of ministerial/typographical errors. As to Cribeiro's claim that a confidential informant ("CI") was unreliable, his cell phone and race track records do not disprove any part of the CI's account, as they do not exclude the possibility that Cribeiro might have traveled when not at the racetrack or that he might have contacted the CI in other ways. *See* doc. 458, pp. 8–10. Finally, the alleged inconsistent statements from the CI do not show that the informant was so unreliable that the government's reliance on him invalidated any part of their case, particularly in light of the video evidence of the crimes, discussed *infra*, and the other evidence relied upon by law enforcement in their warrant applications. *See generally* doc. 425; *see also United States v. Mays*, 466 F.3d 335, 343–44 (5th Cir. 2006) (reliability of information from confidential informants evaluated under totality of the circumstances).

### c. *Failure to subpoena surveillance videos*

Cribeiro next raises a series of claims relating to his attorneys' willingness to investigate certain evidence and claims. The first of these relates to surveillance videos of various controlled buys involving Cribeiro.

Adequate investigation is a necessary part of effective assistance. *Gray v. Lucas*, 677 F.2d 1086, 1093 (5th Cir. 1982). To maintain an ineffective assistance claim based on failure to investigate, a defendant "must allege with specificity what the investigation would have revealed and how it would have altered the outcome." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Cribeiro contends that he advised defense counsel that any video evidence must be fraudulent, but that the defense failed "to file a motion to subpoena the 'original' surveillance videos." Doc. 414, att. 1, p. 7. However, the defense acknowledged in a pretrial conference that the government had complied with the defense's request to "allow the examination and testing of the original audio/videotapes which are recordings of Mr. Cribeiro participating in the alleged offenses." Doc. 270, p. 1; doc. 275. Therefore there is no merit to Cribeiro's claim that the defense failed to seek this evidence.

### d. *Failure to investigate claim that Cribeiro was out of state*

Cribeiro next alleges that his attorneys failed to investigate his claims that he was working out of state during some of the time the conspiracy was being perpetrated. The records he provides in support of this claim do not exclude his presence from Vinton, Louisiana, during the offense conduct. *Compare* doc. 414, att. 1, p. 8 *with* doc. 325, att. 2, pp. 1–8. In light of the fact that the government had both video surveillance of and potential eyewitnesses to the buys, counsel's decision not to investigate these vague claims does not seem unreasonable.

### e. Failure to interview witnesses

Cribeiro next claims that his attorneys performed deficiently by not interviewing witnesses on a list Cribeiro allegedly provided.

While counsel's failure to interview a witness identified as crucial might indicate an inadequate investigation, "the failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance." *United States v. Cockrell*, 720 F.2d 1423, 1428 (5th Cir. 1983) (citing *Gray*, 677 F.2d at 1093 n. 5). When the failure to investigate amounts to a failure to locate and produce a witnesses, a defendant cannot demonstrate prejudice unless he shows that the witness's testimony would have been favorable and that the witness would have been willing to testify on the defendant's behalf. *Lockhart v. McCotter*, 782 F.2d 1275, 1282–83 (5th Cir. 1986); *see also Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985) (noting that the court looks "with great caution" on ineffective assistance claims where the only evidence of a missing witness's testimony is from the defendant).

Here Cribeiro states that he provided counsel with a list of the previous renters of the motel room at the Longhorn Truck Plaza which was identified as Cribeiro's address. As we concluded above, however, the fact that the arrest warrant showed the wrong address for Cribeiro does not invalidate the warrant; accordingly, the testimony of the true inhabitants, if in fact they were, would be of no moment. Cribeiro shows no other relevance of these witnesses to his case. Accordingly, counsel's failure to interview them was not deficient performance.

### *f. Threatening Cribeiro to enter plea agreement*

Cribeiro next alleges that counsel threatened him in order to obtain his willingness to plead guilty.[8] Specifically, he alleges that his attorneys threatened him "[o]n various occasions . . . that if he didn't sign the plea agreement, they would charge his wife and daughter with money laundering." Doc. 414, att. 1, p. 11. He states that he has provided emails from his counsel reflecting these threats to the court, and that they should be in the court record. *Id.*

Cribeiro appeared in court for his guilty plea on October 14, 2015, with counsel Martin Regan, and was placed under oath. Doc. 309, pp. 2, 6. There the court asked whether anyone had "threatened [him] or leaned on [him] or forced [him] in any way to plead guilty," and Cribeiro answered, "No, Your Honor." *Id.* at 17. When asked whether anyone had "promise[d] [him] anything else outside of the four corners of this plea agreement" or, again, whether anyone had "forced [him] or threatened [him] or intimidated [him] in way [*sic*] to enter into a plea agreement," he again answered, "No, Your Honor." *Id.* at 19. Finally, he acknowledged his understanding of the agreement with the stipulated factual basis for the plea. *Id.* at 23–27.

Beginning on October 19, 2015, Cribeiro filed multiple motions to withdraw his guilty plea, alleging that the plea had been induced by threats from Regan. Docs. 287, 288, 290, 294. He claimed that Regan told him that his family would be prosecuted for money laundering because they had helped pay his attorneys' bills. Doc. 294; *see also* doc. 288. In support of his motions Cribeiro submitted several exhibits, including an email exchange between Cribeiro's ex-wife Wendy Garcia and his attorneys, and a text message from Martin Regan to Wendy Garcia,

---

[8] To the extent that Cribeiro intends this as an attack on the voluntariness of his plea, as the government argues, the claim is barred due to his failure to raise it on appeal. If considered as a claim of ineffective assistance, however, as Cribeiro appears to intend it, the procedural bar is inapplicable. *Massaro*, 123 S.Ct. at 1696.

informing her that Cribeiro had accepted the plea deal. Doc. 325, att. 2, pp. 15–16. Following a hearing, at which Garcia testified, the court denied all of the motions. Docs. 324, 444.

A defendant's testimony in open court carries a "strong presumption of verity" and so the defendant bears a heavy burden in showing that his plea was involuntary after he has testified to its voluntariness. *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994). Cribeiro's attachments do not show any threats from his attorneys upon which he could rely to claim his plea was involuntary. The attachments, particularly the referenced text message, do indicate that Cribeiro's attorneys advocated he accept the deal but they also explain why they believed it was in the defendant's best interests to do so.

Cribeiro fails to demonstrate how his counsel's advocacy for this course of action constitutes coercion. Nothing in the record shows what this court would consider to be an actual threat to Cribeiro and thus we have nothing upon which we can rely to overcome the "strong presumption of verity" attributed by law to his in-court testimony.

Cribeiro has failed to satisfy *Strickland* under any of the above allegations. Accordingly, he does not show a right to relief under § 2255 through his claim of ineffective assistance.

### 2. *Breach of plea agreement*

Cribeiro next contends that the government breached the plea agreement because it failed to advise the court that Cribeiro had only accepted responsibility for 14 grams of methamphetamine rather than the larger amount used to calculate his sentencing range. Doc. 414, att. 1, pp. 12–13.

As the government notes, Cribeiro failed to raise this claim on direct appeal. Cribeiro attempts to excuse the default by blaming counsel for failing to pursue an appeal. Doc. 414, p. 7. However, a notice of appeal was filed and then that appeal was voluntarily dismissed by Cribeiro.

Doc. 356; doc. 436, att. 1, pp. 13–15. Cribeiro's allegation is baseless, and he has not shown any other grounds for avoiding a procedural default of this claim. Accordingly, the claim is procedurally barred.[9]

### 3. Sentencing calculation error

Lastly, Cribeiro alleges that the court erred by using a greater amount of methamphetamine to determine his sentencing range than the 14 grams involved in the offense of conviction. Doc. 414, att. 1, pp. 14–15. For reasons stated above, Cribeiro's allegation that the fault lies with counsel for failing to raise the claim on appeal is without merit. Therefore, as the government argues, this claim is procedurally barred.[10]

## C. Entitlement to an evidentiary hearing

Cribeiro has requested an evidentiary hearing on his claims. The court must grant a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *e.g.*, *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). No evidentiary hearing is required where the defendant's claims are "either contrary to law or plainly refuted by the record." *United States v. Green*, 882 F.2d 999, 1008 (5th Cir. 1989). Furthermore, "[c]onclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir.

---

[9] Even if the procedural bar were excused, this claim would not provide Cribeiro with any right to relief. The plea agreement contains no evidence of an agreement to drug quantity, nor does it contain any indication that the government would withhold information from the court. *See* doc. 282. On the contrary, as the government notes, the agreement expressly states that "as part of the presentence investigation the Government will make available to the Court all evidence developed in the investigation of this case." *Id.* at 4. Under the Sentencing Guidelines, "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." U.S.S.G. § 2D1.1, Application Note 5. Accordingly, the fact that the government did not object to the pre-sentence investigation report's reference to other controlled buys involved in this investigation as part of the "offense conduct," showing the same total amount of drugs as reflected in the stipulated factual basis for Cribeiro's guilty plea, does not show any breach of the plea agreement. *See* doc. 338, pp. 7–8; doc. 282, att. 2, p. 1.

[10] Likewise, for reasons stated in the previous footnote, this claim is without merit. Under the Sentencing Guidelines, the court was permitted to consider the total amount of methamphetamine sold by Cribeiro under this investigation.

2013). A defendant must present "independent indicia of the likely merit of [his] allegations" to show that he is entitled to a hearing on his § 2255 motion. *Id.* (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)).

Cribeiro's claims are entirely based on conclusory and unsubstantiated allegations and his own self-serving account, which contradicts his prior sworn admissions. His voluminous exhibits do not substantiate any of his claims. He shows no factual support for the improbable scenarios asserted above, and the filings and record demonstrate that he is not entitled to relief. Therefore no hearing is required.

### III.
#### CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the original and amended Motions to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [docs. 406, 414] be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 12th day of September, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE